Misty A. Murray (SBN CA 196870)
mmurray@hinshawlaw.com
Dayna L. Berkowitz (SBN CA 316528)
dberkowitz@hinshawlaw.com
HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
Telephone: 213-680-2800
Facsimile: 213-614-7399

Attorneys for Plaintiff-in-Interpleader
Metropolitan Life Insurance Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>　　　　Plaintiff-in-Interpleader,<br><br>　　vs.<br><br>PAUL KELLY, as successor trustee of The Kelly Family Trust, WENDELL KELLY, as successor trustee of The Kelly Family Trust, and RHEA EVANS, as successor trustee of The Kelly Family Trust,<br><br>　　　　Defendants-in-Interpleader. | Case No.<br><br>**PLAINTIFF-IN-INTERPLEADER METROPOLITAN LIFE INSURANCE COMPANY'S COMPLAINT-IN-INTERPLEADER** |

# COMPLAINT-IN-INTERPLEADER

COMES NOW Plaintiff-in-Interpleader Metropolitan Life Insurance Company ("MetLife"), by and through its attorneys, and for its Complaint-in-Interpleader states:

## PARTIES

1. MetLife is, and at all relevant times was, a corporation organized under the laws of the state of New York, with its principal place of business in New York. MetLife is duly licensed to do business in the state of California.

2. Upon information and belief, Defendant-in-Interpleader Paul Kelly ("Paul")[1] is the surviving son of the now deceased Herman Kelly ("Decedent") and is, and at all relevant times was, a citizen and resident of Fountain Valley, California. Upon information and belief, Paul is a successor trustee of The Kelly Family Trust (the "Trust").

3. Upon information and belief, Defendant-in-Interpleader Wendell Kelly ("Wendell") is the surviving son of Decedent and is, and at all relevant times was, a citizen and resident of Corona, California. Upon information and belief, Wendell is a successor trustee of the Trust.

4. Upon information and belief, Defendant-in-Interpleader Rhea Evans ("Rhea") is the surviving daughter of Decedent and is, and at all relevant times was, a citizen and resident of Castle Rock, Colorado. Upon information and belief, Rhea is a successor trustee of the Trust.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because the action arises under the

---

[1] Because some of the Defendants-in-Interpleader have the same last name, MetLife refers to them by first name.

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

303559173v2 1019108

1  Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29
2  U.S.C. § 1001, *et seq.* Alternatively, this Court has original jurisdiction over this
3  action pursuant to 28 U.S.C. § 1335 because there is minimal diversity among the
4  competing claimants and the amount in dispute exceeds $500.00. Further, this is an
5  interpleader action pursuant to Rule 22 of the Federal Rules of Civil Procedure.

6. Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because at least one named Defendant-in-Interpleader resides in this district and because a substantial part of the events giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

7. The Decedent was, at one time, an employee of Allstate Insurance Company ("Allstate") and a participant in the Allstate Insurance Company Life Insurance Plan for Former Claims Employees (the "Plan"), an ERISA-regulated employee welfare benefit plan sponsored by Allstate. The Plan provides life insurance benefits funded by a group life insurance policy issued by MetLife. MetLife is also the third-party administrator for the Plan. As a Plan participant, Decedent had the following life insurance benefits: optional life insurance benefits in the amount of $30,000.00 ("Plan Benefits"). Attached hereto as Exhibit "A" is a true and correct copy of the Summary Plan Description ("SPD") for the Plan, which describes the terms and provisions of coverage under the Plan.

8. The SPD provides that an insured, such as Decedent, may designate a beneficiary to whom MetLife will pay the Plan Benefits. The SPD states in relevant part on page 11:

> **Choosing Your Beneficiary**
>
> You may designate one or more beneficiaries to whom benefits will be paid in the event of your death.
>
> You may choose one or more primary beneficiaries. You may also choose one or more contingent beneficiaries. Your living

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

303559173v2 1019108

primary beneficiary(ies) is eligible to receive benefits under the Plan upon your death. Your living contingent beneficiary(ies) is eligible only if no primary beneficiary is living at the time of your death. Your beneficiaries may be people or entities including trusts, foundations or charitable organizations (as long as the organization has a Federal Tax Identification Number).

9. Decedent died on September 15, 2011. A true and correct copy of Decedent's death certificate is attached hereto as "Exhibit B."

10. The Plan Benefits became payable to the proper beneficiary or beneficiaries upon Decedent's death pursuant to the terms of the Plan.

11. As of the date of Decedent's death, the latest beneficiary designation on file designated the Trust as primary beneficiary to receive 100% of the Plan Benefits. There is no current dispute over the propriety of the Trust as beneficiary.

12. By letter dated November 2, 2011, MetLife requested additional information from the Trust in order to process the distribution of the Plan Benefits. Specifically, among other items, MetLife requested a completed "Certification of Trustee(s)" form so that it could identify the trustee(s) who were empowered to receive payment of the Plan Benefits. A true and correct copy of MetLife's letter dated November 2, 2011 is attached hereto as "Exhibit C."

13. MetLife received no response to the initial letter dated November 2, 2011 despite its attempts to obtain the necessary information to distribute the Plan Benefits. MetLife, therefore, deposited the Plan Benefits into a liability account.

14. On or about February 28, 2014, MetLife received various documents from Paul, including a completed Certification of Trustee(s) form signed by Paul and Rhea. A true and correct copy of the Certification of Trustee(s) form signed by Paul and Rhea and dated February 28, 2014 is attached hereto as "Exhibit D."

15. With the completed Certification of Trustee(s) form, Paul also provided a copy of certain pages of the Trust documents dated October 30, 1995. The Trust documents provided indicated that Wendell and Paul were to serve as successor co-trustees and that Rhea was to be substituted in as successor co-trustee if either

Wendell or Paul became unwilling or unable to serve.[2]  Paul also included a letter along with the completed Certification of Trustee(s) form and the Trust documents which explained why Rhea had signed the Certification of Trustee(s) in place of Wendell.  Specifically, Paul stated that while Paul and Wendell were originally designated as successor co-trustees, Decedent executed a document in 2011 that designated Paul and Rhea to serve as successor co-trustees, with Wendell to serve as successor co-trustee only if either Paul or Rhea were unwilling or unable to serve.  Paul also stated that Wendell was unwilling to serve as successor co-trustee and, therefore, Rhea was entitled to substitute in and act as successor co-trustee.  Thus, Paul asserted that he and Rhea were the proper successor co-trustees empowered to sign the Certification of Trustee(s) form and receive payment of the Plan Benefits.  A true and correct copy of the February 28, 2014 letter from Paul with relevant enclosures, including certain pages of the Trust documents, is attached hereto as "Exhibit E."

16.    On March 31, 2014, MetLife, in good faith and without any competing claim by Wendell, paid out the Plan Benefits to the Trust with Paul and Rhea as successor co-trustees.

17.    On or about January 27, 2015, Wendell informed MetLife via telephone that the Plan Benefits were never deposited into the Trust because Wendell was the proper successor co-trustee and, accordingly, Wendell's signature, not Rhea's, was required to deposit the Plan Benefits.  Pursuant to this claim by Wendell, MetLife credited back the check for the Plan Benefits on or about January 28, 2015.

18.    By letter dated February 25, 2015, MetLife subsequently informed Paul that the Certification of Trustee(s) form he submitted was being returned to him because it did not contain the signatures of all successor co-trustees.  MetLife asked

---

[2] The initial trustees of the Trust were Decedent and Tommie L. Kelly ("Tommie").  Tommie died on or about July 12, 2009.  Consequently, the successor trustee(s) are the operative trustee(s) empowered to receive the Plan Benefits.

that Paul complete the Certification of Trustee(s) form with all necessary successor trustee signatures. A true and correct copy of MetLife's letter to Paul dated February 25, 2015, without attachments, is attached hereto as Exhibit "F."

19. On or about August 17, 2015, Wendell submitted a Certification of Trustee(s) form with his signature only. A true and correct copy of the Certification of Trustee(s) form signed by Wendell and dated August 17, 2015 is attached hereto as "Exhibit G."

20. By letter dated August 25, 2015, MetLife informed Wendell that the Certification of Trustee(s) form he submitted was being returned to him because it did not contain the signatures of all successor co-trustees. MetLife asked that Wendell complete the Certification of Trustee(s) form with all necessary successor trustee signatures. A true and correct copy of MetLife's letter to Wendell dated August 25, 2015, without attachments, is attached hereto as Exhibit "H."

21. Wendell subsequently sent MetLife a letter dated October 12, 2015 asserting that Paul and Rhea acted inappropriately in regards to the Trust and recused themselves as successor trustees, thereby leaving Wendell as the only successor trustee. Wendell accordingly alleged that the Plan Benefits could be paid to the Trust with him as successor trustee. A true and correct copy of the October 12, 2015 letter from Wendell, without attachments, is attached hereto as Exhibit "I."

22. Given the conflicting Certification of Trustee(s) submitted to MetLife, in an attempt to determine the proper successor trustees, by letter dated October 23, 2015, MetLife requested a copy of the full Trust document along with any amendments/restatements. True and correct copies of MetLife's October 23, 2015 letters to Paul and Wendell, without attachments, are attached hereto as Exhibit "J."

23. MetLife received no response to its October 23, 2015 letters but continued its efforts to obtain information that would permit MetLife to distribute the Plan Benefits.

24. On or about January 23, 2016, MetLife received a letter from Paul and Rhea. In the letter, Paul and Rhea alleged that Wendell was disqualified as successor co-trustee of the Trust and instructed MetLife to not disburse the Plan Benefits until Wendell resigned or could be removed as successor trustee. A true and correct copy of the January 23, 2016 letter to MetLife is attached hereto as Exhibit "K."

25. Due to the conflicting Certification of Trustee(s) submitted by Paul and Wendell, along with the various allegations of disqualification, MetLife could not determine the proper successor trustees of the Trust. Further, MetLife could not determine whether Decedent's 2011 change to the successor co-trustees was effective.

26. Accordingly, by letter dated February 15, 2016, MetLife sent a pre-interpleader letter to Paul, Wendell, and Rhea regarding the conflict. MetLife advised Defendants-in-Interpleader that MetLife could not determine who the operative successor trustees of the Trust were and, therefore, could not disburse the Plan Benefits without the possibility of exposing itself to the danger of multiple liability. MetLife gave Defendants-in-Interpleader an opportunity to resolve this conflict in order to preserve the Plan Benefits from litigation fees and costs associated with an interpleader action. A true and correct copy of MetLife's February 15, 2016 letter is attached hereto as "Exhibit L."

27. Despite ample time to come to an agreement, Defendants-in-Interpleader could not reach an agreement as to the proper successor trustee(s) of the Trust and distribution of the Plan Benefits.

28. Given that MetLife does not know who among the successor trustees has the power to sign the Certification of Trustee(s) form—and accordingly who among the Defendants-in-Interpleader is empowered to receive payment of the Plan Benefits to the Trust—and given the parties' inability to reach an informal resolution, MetLife had no choice but to proceed with an interpleader action.

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

303559173v2 1019108

# FIRST CLAIM FOR RELIEF FOR INTERPLEADER

## (Against All Defendants-in-Interpleader)

29. MetLife incorporates by reference paragraphs 1 through 28, inclusive, as though fully set forth herein.

30. The terms of the Plan require MetLife to pay the Plan Benefits to the beneficiary or beneficiaries of record designated at the time of Decedent's death. As set forth above, Decedent designated the Trust to receive 100% of the Plan Benefits. However, as detailed above, it is unclear to MetLife who the proper successor trustees are and consequently, who among the successor trustees is empowered to receive payment of the Plan Benefits to the Trust. While Paul and Rhea allege they are the proper successor co-trustees, Wendell alleges that he is the sole successor trustee.

31. If the Court finds that Rhea and Paul are the successor co-trustees, then the Plan Benefits would be payable to them as successor co-trustees of the Trust. Alternatively, if the Court finds that Wendell is the sole successor trustee, then the Plan Benefits would be payable to him as the sole successor trustee of the Trust.

32. MetLife is unable to determine which of the Defendants-in-Interpleader is the proper successor trustee(s) of the Trust and is therefore unable to pay out the Plan Benefits without risking exposure of itself, the Plan, and Allstate to multiple liabilities. MetLife files this interpleader complaint in good faith and without any collusion with any of the parties hereto. MetLife claims no interest in the Plan Benefits (except to recover its attorneys' fees and costs of this action) and is merely a disinterested stakeholder in the action. MetLife admits its liability under the Plan Benefits in the amount due and will deposit the Plan Benefits plus applicable interest with the Court in connection with these proceedings for disbursement in accordance with the judgment of the Court.

33. MetLife is, and always has been, ready, able, and willing to pay the Plan Benefits to the entity or person(s) who may be lawfully entitled to receive

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

303559173v2 1019108

them. However, MetLife is unable to determine who the proper successor trustee(s) is and therefore cannot release the Plan Benefits to the Trust without being subject to the real and reasonable potential of multiple liabilities as a result of the conflicting claims described above.

34. MetLife has incurred, and will continue to incur, attorneys' fees and costs in connection with this interpleader action and will seek to recover those fees from the stake at issue.

## PRAYER FOR RELIEF

WHEREFORE, MetLife prays for judgment against Defendants-in-Interpleader, and each of them, as follows:

1. That Defendants-in-Interpleader, and each of them, be required to interplead and litigate amongst themselves who the rightful successor trustee(s) is to the Trust, and accordingly, who is empowered to receive payment of the Plan Benefits, or upon their failure to do so, that this Court settle and adjust their claims and determine who the rightful successor trustee is;

2. That this Court enter an order setting forth the proper successor trustee(s) of the Trust;

3. That this Court enter an order restraining and enjoining the Defendants-in-Interpleader from instituting any action or proceeding in any state or United States court against MetLife or its agents, Allstate, or the Plan for recovery of the Plan Benefits, plus any applicable interest, by reason of the death of Decedent;

4. That MetLife be dismissed with prejudice from this action and discharged of all liability with respect to the Certificate and the Plan Benefits due thereunder as a result of Decedent's death upon payment of the Plan Benefits, plus any applicable interest, into the Registry of the Court, or as otherwise directed by this Court;

1      5.    That MetLife be awarded its costs and attorneys' fees, paid out of the stake to be deposited with the Court;

    6.    That MetLife be awarded such other and further relief as this Court deems just, equitable, and proper.

DATED: May 2, 2019                         HINSHAW & CULBERTSON LLP

                                              By: */s/ Dayna Berkowitz*
                                                  Misty A. Murray
                                                  Dayna L. Berkowitz
                                                  Attorneys for Plaintiff-in-Interpleader
                                                  Metropolitan Life Insurance Company